Freehold and New York Railway Co. v. Hodgson.

*Decree unanimously affirmed.*

---

THE FREEHOLD AND NEW YORK RAILWAY COMPANY, appellant,

*v.*

TELFAIR HODGSON, respondent.

---

JAMES P. LOWREY, appellant,

*v.*

TELFAIR HODGSON, respondent.

---

The holder of a decree against an insolvent railway corporation who, as director of a new corporation, with full knowledge, consents to the subsequent acceptance of a deed from a receiver to it, free from all encumbrances, under the statute, and votes to execute a mortgage for the security of bond-holders, which shall be a first lien—*Held*, not entitled, on petition, to execution and sale of land of the company, with priority.

---

On appeal from an order advised by Vice-Chancellor Bird, whose opinion is as follows:

Freehold and New York Railway Co. *v.* Hodgson.

The petition shows that Rue obtained a decree in this court on which a balance was due, and that he (the petitioner) took an assignment for a valuable consideration of one-half of that balance. The petition also shows that the lands of the defendant company have been conveyed to the Freehold and New York Railway Company, subject to the lien of his decree, and prays for a *fi. fa.* to make his money.

The Freehold and New York Railway Company and Mr. James P. Lowrey insist that there is nothing due to the petitioner. They urge that his interest was all sold and transferred by the proceedings in this court at the suit of Emson against the defendant company as an insolvent corporation, by the receiver appointed, who sold all the assets under an order of the court; and if not thereby sold and transferred, said interest was, in equity, sold and transferred, or that he agreed to transfer it to Lowrey; and if neither of these insistments be mentioned, then he is estopped as against the New York Railway Company.

1. I do not think the rights or interests of the petitioner were affected by anything which the receiver did. I do not find that he was a party, in his individual capacity, in those proceedings. He was president of the defendant company, it is true, and in that suit, as such, the writ was served upon him; but our courts have uniformly held that proceedings against a defendant in a representative capacity, do not render it proper or necessary for him to answer in his individual capacity. *Wade* v. *Miller, 3 Vr. 296 ; Kirkpatrick* v. *Corning, 11 Stew. Eq. 234.*

2. Nor do I find that there is any obligation, in equity, resting on the petitioner to assign or transfer his interest in said decree by virtue of the alleged agreement between him and Mr. Lowrey. I do not find that any agreement was consummated. That the two were negotiating is very certain, but there is no proof that they were ever of one mind upon the entire scope of the propositions submitted. A fair test would be the application of the doctrine at the foundation of the jurisdiction for specific performance. It seems to me that if the respondents were complainants in such case, with the testimony as it now stands before me, their failure would be most certain, because of the absence of a valid or binding agreement.

3. It seems equally clear to my mind that the doctrine of estoppel cannot be made available. It is said that when the assets of the Freehold and New York Railway Company were pledged by mortgage, the petitioner was present, and that in his presence and by his vote, it was resolved that that mortgage should be the first lien on all the lands &c. of the Freehold and New York Railway Company. Supposing this to be true, it is very clear that, so far as the petitioner was concerned, everything that he did or consented to was in contemplation of the completion of his agreement, as he understood he had made it, with Mr. Lowrey. Besides, as the case stands before me, there is no room, under any circumstances, for the doctrine invoked. Mr. Lowrey is not in an attitude to stand on such a defence. He was a party to the negotiations, and knew that the alleged agreement had not been carried out. He also knew that the petitioner had no interest in the Freehold and New York Railway Company, outside of that agreement, for, although he was named as a director thereof, there was only one share of the stock in his name, and that, I think, he did not own, he being a mere figure by way of counting, to aid Mr. Lowrey in perfecting his railway project, and counting only at the instance of Mr. Lowrey. Therefore, Mr. Lowrey is not sustained by the equitable principle contended for, nor is the Freehold and New York Railway Company, for at that time, as I read the testimony, Mr. Lowrey was to all intents, the company. The entire management was in his hands. At the period of time referred to, whatever acts others joined in, it seems to me they were at the bidding or direction of Mr. Lowrey. I think the petitioner is entitled to the writ he asks for, with costs, and shall so advise.

*Mr. W. H. Vredenburgh,* for appellants.

*Mr. Joseph F. Randolph,* for respondent.

These two appeals were argued together, and as they involve substantially the same facts, are so considered and decided.

A final decree was rendered in the court of chancery on November 9th, 1874, in favor of Jacob B. Rue, complainant, against the Monmouth County Agricultural Railroad Company,

for unpaid purchase-money on sale of lands described in the decree, amounting to $2,497.70, including costs of suit. This decree was assigned by Jacob B. Rue to John S. Schultze and Telfair Hodgson, January 26th, 1875, each paying one-half of the whole sum due on it. Prior to this decree, on October 1st, 1872, the Monmouth County Railroad Company had executed to William H. Brown and William Statsir, trustees, a mortgage on their railroad, lands, ways, franchises and rights, to secure bonds to be issued, to the amount of $700,000. Two judgments were obtained by other parties prior to the decree in Rue's action. On November 23d, 1875, Christian D. Emson, a stockholder, on behalf of himself and other stockholders, filed a bill to have the company declared insolvent, charging that the $700,000 mortgage and the bonds issued thereon were illegal, and praying for the appointment of a receiver and other relief. This bill made Schultze a party as assignee of the Rue decree, but not Hodgson (as his assignment was not recorded), but Hodgson was served with process as president of the Monmouth Agricultural Railroad Company, which was made a party to the suit. On December 10th, 1875, a receiver was appointed. On December 14th, 1875, the receiver filed a petition, setting forth, among other things, that the property was encumbered with a mortgage, the legality of which was brought in question, and that the property was of a character materially to deteriorate in value pending the litigation, and praying that he might be ordered to sell the real and personal estate and franchises of the company, free and clear of and from all encumbrances, the proceeds of sale to be brought into court to abide its further order, pursuant to the statute. A decree to that effect was made December 28th, 1875, and on March 21st, 1876, the receiver sold and conveyed to James P. Lowrey all the railroad property and franchises, free and clear of all encumbrances, for the sum of $115,000. At that time only the right of way had been purchased, and some grading done. The bonds issued under the $700,000 mortgage, amounting to $71,000, were satisfied and canceled, and all debts and liens of the company settled, including the one-half of the Rue decree assigned to Hodgson. This

Lowrey claimed to own, and receipted for it to the receiver July 3d, 1877.   Lowrey conveyed to the Freehold and New York Railway Company all the property transferred to him by the receiver under the decree of the court of chancery.   A mortgage for $100,000, and bonds to be secured thereby on the railroad were directed, by resolution of the company, to be issued to John N. Whiting, trustee.   The bonds were described therein as first-mortgage bonds, and were issued July 1st, 1878 ; another mortgage to secure $200,000 was executed, and bonds issued to take up the prior $100,000, and provide for the extension of the road to Keyport, and this, by its terms, was to be a first lien on the railroad.   On May 20th, 1882, Mr. Hodgson filed his petition in the original action of Jacob B. Rue against the Monmouth County Agricultural Railroad Company to be made a party, and have execution for the amount claimed by him under the decree, and on October 28th, 1884, an order for execution and sale was made.   From this order the present appeal was taken by Lowrey and Whiting.

The opinion of the court was delivered by

SCUDDER, J.

The petitioner claims that being the purchaser and owner of an undivided half part of the decree rendered in favor of Jacob B. Rue, a land-owner, November 9th, 1874, he is entitled to execution to sell the lands named therein, to satisfy his debt, with interest and costs.   These lands are now part of the road-bed of the Freehold and New York Railway Company, which purchased the road and franchises of the Monmouth County Agricultural Railroad Company, an insolvent corporation, and is now using them for railway purposes under its charter.   The appellant, James P. Lowrey, purchased the property at the sale made by the receiver appointed by the court of chancery, and having completed the railroad, transferred and conveyed it to the Freehold and New York Railway Company.   Being still interested therein as stockholder and bondholder, grantor and part owner of the decree, Lowrey was made a party under the

petition, and has appealed from the order awarding execution and sale. John N. Whiting, the other appellant, to whom the mortgage was made in trust for $200,000 to secure bondholders, has also appealed from this order, to save the rights of those whom he represents.

The property of the insolvent company having been sold by the receiver under the act of 1866 (*Rev. p. 192 § 84*) clear of encumbrances, it is first argued that this decree, owned in part by Hodgson, has been thereby canceled, and that the only claim he can have is upon the proceeds of sale in the court, or in the hands of the receiver. But Hodgson was not made a party to the bill filed by Emson, as an individual, but only as president of the Monmouth County Agricultural Railroad Company. Lowrey assumes to act on settlement with the receiver, not only as representing the one-half of the decree which had been transferred to him by Schultze, but also for Hodgson's half, which is claimed in these proceedings. It is obvious that Hodgson could not be bound by a decree in the action, wherein he was not made a party, nor could the fact that he was made such, as the presiding officer of the insolvent corporation, affect his private and individual interest, or take away the encumbrance of his share of the Rue decree. Parties having adverse interests must be made parties in action. *Wade* v. *Miller, 3 Vr. 296 ; Middleton* v. *N. J. West Line R. R. Co., 10 C. E. Gr. 306 ; Williamson* v. *N. J. Southern R. R. Co., 10 C. E. Gr. 13 ; Kirkpatrick* v. *Corning, 11 Stew. Eq. 234.*

But Lowrey did not act without some show of authority in settling this decree, for, at the time, he was negotiating with Hodgson for the purchase and transfer of the latter's interest in it. Both were promoters of the railroad, and had shown great interest in its success. The formal offer for the purchase of the railroad was made by Lowrey to the receiver on March 15th, 1876, and on March 16th, 1876, he had written to Hodgson these words :

"I have arranged as respects all the debts known to me, except the Rue judgment, of which, as I understand, you own one-half. Please tell me, at your earliest convenience, exactly what interest you have in this judgment, and what amount you will take in discharge thereof."

On May 29th, 1876, he again wrote to Hodgson that he had completed the matter of the transfer to him of all the properties which were of the Monmouth County Agricultural Railroad Company, and requested to see him for a short time in connection with that matter, and asked that he would stop in the office and see him. Shortly after, and in the latter part of May, or prior to June 3d, 1876, he did call, and, as Lowrey testifies, he fully stated to him the then exact position of affairs, and showed and read to him the proposition he had made to the receiver, Dickinson, and Hodgson agreed to look over his situation with respect to the railway company, and communicate with him, what he wished to have done, with respect to his interest in the affair. Before June 3d he called again, and presented a paper written by himself, which was offered in evidence, showing his account with the company, including what he had paid on stock, his share of the Rue judgment and sundry amounts paid by him for the company, amounting in all to $15,086.50. This sum was divided in half in the statement, showing a product of $7,543.25, and opposite this was written "seventy-six shares stock." On June 2d, 1876, a letter was written by Lowrey to Hodgson, stating, among other things:

"I propose that you shall assign to me all your claims and rights of every nature upon the old company, including moneys advanced, the Rue judgment, and everything, upon my agreeing to cause to be issued to you upon the actual organization of the new company, not later than September 15th next, seventy-five shares of $100 each, of the capital stock of the new company, upon a basis of a capital of $200,000, or in that proportion, in whatever sum the capital may be fixed."

On June 15th, 1876, Hodgson replied by postal card:

"I was to see you to-day, but you were out; will arrange the contract you sent as you wish, and bring it over soon."

On July 13th, 1876, Hodgson again wrote:

"In regard to the assignment of my claim &c., I will have it arranged, and bring it over before long."

Meanwhile, Lowrey entered into possession of the railroad under deed from Dickinson, receiver, dated March 17th, 1876, acknowledged May 17th, 1876, and recorded May 30th, 1876, about which time the deeds appear to have been delivered, having satisfied or paid $71,000 of bonds issued on the $700,000 mortgage, and other outstanding claims amounting to over $115,000, and constructed the railroad from Freehold to Keyport. These were all preparatory to the organization of the new company. The Freehold and New York Railway Company was incorporated June 29th, 1877, and by deed dated July 3d, 1877, James P. Lowrey conveyed to this company the railroad and franchises, reciting therein, among other things, the receiver's deed to him. Mr. Hodgson was an incorporator and director named in the articles of association of the new company, which were signed by him. At the first meeting of the directors, June 29th, 1877, he was present, voted to accept the deed from Lowrey, and for the mortgage to be executed to Whitney, as trustee, to secure an issue of $100,000 of bonds of the company to pay for the road; and he was also present at a meeting of the directors September 19th, 1877, when a report was made of the conveyance by Lowrey and the execution of the mortgage to Whiting, which he voted to accept. Subsequently, in June, 1878, the board of directors of the railroad, of which Mr. Hodgson was still a member, directed, with his knowledge and concurrence, another mortgage to be made to Whiting to secure $200,000 of bonds of the company, whereof $100,000 in amount was to be reserved for exchange for the bonds of 1877 ; and it was resolved that this mortgage should cover, and be the first lien upon all the property of the company. Shortly before the organization of the new company, on or about June 1st, 1877, Mr. Lowrey executed and delivered to Mr. Hodgson an agreement dated May 15th, 1876, setting forth that, in consideration of the assignment to him of all the latter's claims of every nature against the Monmouth County Agricultural Company, he would cause to be issued to him seventy-five shares of the capital stock of the new company according to the terms of his proposition, above set forth. This paper was received by Mr. Hodgson,

and has been retained by him without objection as to its terms, and without demand for the shares, or any action by him until the petition in this case was filed on June 9th, 1882. Mr. Lowrey testifies that he has been continuously ready from the time the stock-books of the Freehold and New York Railroad Company were opened, about July, 1877, to deliver to Mr. Hodgson the seventy-five shares of stock in shape of a certificate in his own name, with blank assignment, which he produces and tenders to the petitioner.

Mr. Hodgson went to reside in the state of Tennessee in 1878, where he has since lived, and there has been no communication between the parties since that time. Lowrey now says that he had forgotten that the actual transfer of the seventy-five shares had not been made to Hodgson, and Hodgson testifies that he was easy, supposing his lien was good under the Rue decree and could not be taken from him without some further act or assignment on his part. He seems not to have known, or to have forgotten, that he has so acted as to exclude all evidence of his claim against those who have subsequently acquired rights in this railroad, and that he is estopped by his conduct from enforcing his assigned decree against them in the form sought in his petition, that is, by a sale of a part of the road under execution, which would cut off the deeds of conveyance made by the receiver to Lowrey, and from Lowrey to the Freehold and New York Railroad Company, the two mortgages to Whiting, and the bondholders secured thereby. He had knowledge and participated in the transfer of this title and its acceptance, and in the creation of these securities, which were declared to be first liens on all the property of the railroad, as already appears. He admits that he was present at the meeting of directors, but says he was silent while the board was acting in these matters. But the concealment of his claim of a prior lien by virtue of the Rue decree evidently misled Lowrey, who transferred the title to the new corporation and accepted their bonds in part payment, on the assurance that they should be first liens, and upon the agreement which had been made between them that seventy-five shares of the capital stock of the railway company would be accepted in

payment for the share of the decree held by him, and the other indebtedness of the original company. His silence will be presumed, under the circumstances, to have been maintained with the intention that others should act, and if they acted to their detriment and to his advantage, he will be concluded. He was not only silent, but aided by his votes to put them in this position. Whiting, who represents, as trustee, the bondholders secured by mortgage, so far as appears in the evidence, took the mortgage in good faith, supposing it to be the first lien on the railroad, and cannot in this way be affected by the claim of priority of the Rue decree. This decree must be postponed to the rights of the new company acquired without notice of the petitioner's intention to insist on its priority, for he assented that the title should be free from all encumbrances; and to the rights of the mortgagee and bondholders of the new company, who have taken them as first liens on the railroad property, for he consented to this priority. His remedy against Lowrey remains unaffected by these proceedings, but his petition for the sale of the land of the company, under execution, must be dismissed. The order for execution and sale will be reversed, with costs.

*Decree unanimously reversed.*